| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |  |
|---|---|---|
| DARNISE M. BOWENS, On Behalf of the Minor Children of the Deceased, Michael Armstrong (Gaven Bowen, Gyi Armstrong, and Logan Armstrong), | § § § § § | |
| Plaintiff, | § § | |
| versus | § § | CIVIL ACTION NO. 1:04-CV-688 |
| FEDERAL BUREAU OF PRISONS, FEDERAL CORRECTIONS CENTER, BEAUMONT, and UNIVERSITY OF TEXAS MEDICAL BRANCH, | § § § § § | |
| Defendants. | § § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant University of Texas Medical Branch's ("UTMB") Motion to Dismiss Plaintiff's First Amended and Supplemental Complaint (#15). Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, UTMB seeks dismissal of this case with prejudice. Having reviewed the motion and supporting brief, the pleadings, and the applicable law, the court is of the opinion that dismissal is warranted.

I.   Background

Michael Armstrong ("Armstrong") was an inmate incarcerated in the Federal Corrections Center in Beaumont, Jefferson County, Texas ("FCC"). The Federal Bureau of Prisons ("BOP") owns and operates the FCC, and UTMB is the managed healthcare provider for individuals incarcerated at the FCC.

On November 9, 2002, while playing football in the recreational yard at the FCC, Armstrong suffered what appeared to be a seizure, lost consciousness, and experienced difficulty

breathing.  Two calls were made to the medical staff in the Urgent Care Room ("UCR") before Lt. Vazquez instructed inmates to assist him in carrying Armstrong to the UCR.  The UCR staff provided Armstrong with medical care and attention until he was transported to the emergency room at Mid-Jefferson Hospital, where he was pronounced dead shortly after his arrival.

Plaintiff Darnise M. Bowens ("Bowens") filed this suit against BOP, FCC, and UTMB on November 1, 2004, on behalf of Armstrong's minor children, asserting that this court has jurisdiction pursuant to 42 U.S.C. § 1983 (2000) and 28 U.S.C. §§ 1341,[1] 1343, 1346(b), and 2671-80 (2000).  Bowens seeks compensatory and punitive damages for alleged violations of Armstrong's rights under the Fourth and Eighth Amendments to the United States Constitution.  In her Original Complaint, Bowens asserts that "[t]he deliberate indifference of the prison staff and medical negligence of the UCR staff caused the death of Armstrong and the damages suffered by his minor children."

This court dismissed Bowens's claims against BOP and FCC with prejudice on April 6, 2005, while leaving her claims against UTMB pending.  On June 1, 2005, this court issued an order requiring Bowens to show cause why she had failed to serve UTMB.  After a hearing held June 24, 2005, Plaintiff was given until August 1, 2005, to perfect service of process on UTMB.  On July 26, 2005, UTMB received a summons and a copy of Plaintiff's First Amended and Supplemental Complaint.

On August 15, 2005, UTMB filed this motion to dismiss Plaintiff's First Amended and Supplemental Complaint pursuant to Federal Rule of Civil Procedure 12(b).  In light of the fact that Bowens has yet to file her First Amended and Supplemental Complaint with the clerk's office,

---

[1] The applicability of the Tax Injunction Act, 28 U.S.C. § 1341 (2000), to the case at bar is unclear.

Defendant's motion will be treated as requesting dismissal of Plaintiff's claims against UTMB based on the Original Complaint. In its motion, UTMB asserts: (1) Plaintiff's claims are barred by sovereign immunity; (2) Plaintiff has failed to state a claim upon which relief can be granted; and (3) Plaintiff has not effectuated valid service of process. Because Bowens did not file a response within the time period prescribed by the local rules, the court treats this motion as unopposed. *See* Local Rule CV-7(d)-(e) (2005).

II.     Analysis

    A.     Dismissal for Lack of Subject Matter Jurisdiction

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of the federal district court. *See* FED. R. CIV. P. 12(b)(1). Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute or the Constitution, lack the power to adjudicate claims. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.), *cert. denied*, 534 U.S. 993 (2001); *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Federal courts have subject matter jurisdiction and are authorized to entertain causes of action only where a question of federal law is involved or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1331 (2000); 28 U.S.C. § 1332 (2000) (amended 2005); *McDonal v. Abbott Labs.*, 408 F.3d 177, 181 (5th Cir. 2005); *Howery*, 243 F.3d at 914-15; *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000); *Moore v. Powers*, 279 F. Supp. 2d 821, 824 (E.D. Tex. 2003). "'"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."'" *Krim v. pcOrder.com, Inc.*,

402 F.3d 489, 494 (5th Cir. 2005) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996))); *see Beall v. United States*, 336 F.3d 419, 421 (5th Cir. 2003); *John Corp. v. City of Houston*, 214 F.3d 573, 576 (5th Cir. 2000). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery*, 243 F.3d at 919; *accord Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999).

The burden of establishing federal jurisdiction rests on the party seeking to invoke it. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002); *Howery*, 243 F.3d at 916; *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (5th Cir. 2000); *Stockman*, 138 F.3d at 151; *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997); *Harris v. United States*, 340 F. Supp. 2d 764, 767 (S.D. Tex. 2004); *Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the United States*, 227 F. Supp. 2d 645, 648 (E.D. Tex. 2002), *aff'd*, 362 F.3d 333 (5th Cir. 2004). Indeed, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citing *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984)); *accord Howery*, 243 F.3d at 916 (citing *Kokkonen*, 511 U.S. at 377).

"In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac V.O.F.*, 241 F.3d 420, 424 (5th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002) (citing *Barrera-Montenegro v. United States*, 74

F.3d 657, 659 (5th Cir. 1996)); *accord Krim*, 402 F.3d at 494 n.17; *Montez v. Department of the Navy*, 392 F.3d 147, 149 (5th Cir. 2004); *Ramming*, 281 F.3d at 161; *Robinson v. TCI/US West Commc'ns, Inc.*, 117 F.3d 900, 904 (5th Cir. 1997). Nevertheless, all uncontroverted allegations in the complaint must be accepted as true. *See Den Norske Stats Oljeselskap As*, 241 F.3d at 424; *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981); *Cloud v. United States*, 126 F. Supp. 2d 1012, 1017 (S.D. Tex. 2000), *aff'd*, 281 F.3d 158 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). When examining a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), however, unlike a motion to dismiss under Rule 12(b)(6), the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Ramming*, 281 F.3d at 161-62; *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986); *Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985); *Williamson*, 645 F.2d at 413; *Cloud*, 126 F. Supp. 2d at 1017.

It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Williamson*, 645 F.2d at 413; *accord O'Quinn v. Manuel*, 773 F.2d 605, 607 (5th Cir. 1985); *Polisoto v. Weinberger*, 638 F. Supp. 1353, 1358-59 (W.D. Tex. 1986). "Jurisdictional issues are for the court—not a jury—to decide, whether they hinge on legal or factual determinations." *Williamson*, 645 F.2d at 413; *accord O'Quinn*, 773 F.2d at 607; *Polisoto*, 638 F. Supp. at 1359. The district court is "'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" *Krim*, 402 F.3d at 494 n.17 (quoting *Montez*, 392 F.3d at 149 (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947))). The court must always be mindful, however, of "the first principle

of federal jurisdiction," which requires a federal court to dismiss an action whenever it appears that subject matter jurisdiction is lacking. *Stockman*, 138 F.3d at 151.

"Attacks on subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260-61 (11th Cir. 1997) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)); *see Williamson*, 645 F.2d at 412; *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980). "'Facial attacks on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."'" *Garcia*, 104 F.3d at 1261 (quoting *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511)); *see Den Norske Stats Oljeselskap As*, 241 F.3d at 424 (citing *Williamson*, 645 F.2d at 412); *Harris*, 340 F. Supp. 2d at 768; *Latimer v. Wise*, 193 F. Supp. 2d 899, 900 (E.D. Tex. 2001); *Cloud*, 126 F. Supp. 2d at 1017. When a facial attack is involved, as with a motion under Rule 12(b)(6), "[a] motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010 (citing *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992)); *see Ramming*, 281 F.3d at 161. "'"Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."'" *Garcia*, 104 F.3d at 1261 (quoting *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511)); *see Williamson*, 645 F.2d at 413.

Where, as here, "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161 (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (holding that when there is both a want of jurisdiction under Rule 12(b)(1) and a failure to state a claim on which relief can be granted under Rule 12(b)(6), the trial court should dismiss on the jurisdictional ground without reaching the question of failure to state a claim)). "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161 (citing *Hitt*, 561 F.2d at 608). Dismissal of a plaintiff's case for lack of subject matter jurisdiction is not a determination on the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *See Ramming*, 281 F.3d at 161 (citing *Hitt*, 561 F.2d at 608).

In bringing this motion to dismiss under Rule 12(b)(1), UTMB relies solely on the language of the complaint. Accordingly, under this facial attack on the complaint, Bowens's allegations must be taken as true for purposes of determining whether she has sufficiently alleged a basis for subject matter jurisdiction, and the court will not consider additional testimony or affidavits in making its determination. *See Garcia*, 104 F.3d at 1261. The complaint must be dismissed if it appears that Bowens is unable to prove any set of facts in support of her claims that would entitle her to relief. *See Ramming*, 281 F.3d at 161.

    B.    <u>Sovereign Immunity</u>

It is well recognized that "[f]ederal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies." *Vogt v. Board of Comm'rs of the Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir.), *cert. denied*, 537 U.S. 1088

(2002); *see Hunt v. Smith*, 67 F. Supp. 2d 675, 682 (E.D. Tex. 1999).  The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.  Absent waiver by the state of sovereign immunity or a valid congressional override, the Eleventh Amendment bars the institution of a damages action in federal court against a state or state instrumentality.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 279 (5th Cir. 2005), *cert. denied*, ___ U.S. ___, No. 04-1655, 2005 WL 2493865, at *1 (Oct. 11, 2005); *Martinez v. Texas Dep't of Crim. Justice*, 300 F.3d 567, 573 (5th Cir. 2002); *Sherwinski v. Peterson*, 98 F.3d 849, 851 (5th Cir. 1996); *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996).  The United States Court of Appeals for the Fifth Circuit has held that "eleventh amendment immunity is a jurisdictional issue that 'cannot be ignored, for a meritorious claim to that immunity deprives the court of subject matter jurisdiction of the action.'" *McDonald v. Board of Miss. Levee Comm'rs*, 832 F.2d 901, 906 (5th Cir. 1987) (quoting *Crane v. Texas*, 759 F.2d 412, 415 (5th Cir.), *cert. denied*, 474 U.S. 1020 (1985)); *accord Jefferson v. Louisiana State Sup. Ct.*, 46 F. App'x 732, 732 (5th Cir. 2002).  As the Fifth Circuit explained in *Clay v. Texas Women's Univ.*:

> The eleventh amendment clearly interposes a jurisdictional bar to suits against a state by private parties who seek monetary relief from the state in the form of compensatory damages, punitive damages, or monetary awards in the nature of equitable restitution, and also to suits against a state agency or state official when the monied award is to be paid from the state treasury.

728 F.2d 714, 715 (5th Cir. 1984).

For over a century, the United States Supreme Court has "made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). Eleventh Amendment immunity extends to suits brought in federal court against a state by its own citizens as well as by citizens of another state or foreign country. *See Lapides v. Board of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 616 (2002); *Pennhurst State Sch. & Hosp.*, 465 U.S. at 98-99; *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 418 (5th Cir. 2004); *Vogt*, 294 F.3d at 688; *United States v. Texas Tech Univ.*, 171 F.3d 279, 289 (5th Cir. 1999), *cert. denied*, 530 U.S. 1202 (2000); *Sherwinski*, 98 F.3d at 851. Furthermore, "[i]t has long been settled that the reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *accord Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

Thus, "[e]ven in cases where the State itself is not a named defendant, the State's Eleventh Amendment immunity will extend to any state agency or other political entity that is deemed the 'alter ego' or an 'arm' of the State." *Vogt*, 294 F.3d at 688-89 (citing *Doe*, 519 U.S. at 429); *see Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). "In other words, the Eleventh Amendment will bar a suit if the defendant state agency is so closely connected to the State that the State itself is 'the real, substantial party in interest.'" *Vogt*, 294 F.3d at 689 (quoting *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir.), *cert. denied*, 528 U.S. 1004 (1999)). "The Eleventh Amendment will not bar a suit, though, if the political entity 'possesses

an identity sufficiently distinct' from that of the State." *Id.* (quoting *Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342, 344 (5th Cir.), *cert. denied*, 525 U.S. 1054 (1998)).

As the Fifth Circuit has recognized, "[t]here is no bright-line test for determining whether a political entity is an 'arm of the State' for purposes of Eleventh Amendment immunity." *Id.* "Instead, 'the matter is determined by reasoned judgment about whether the lawsuit is one which, despite the presence of a state agency as the nominal defendant, is effectively against the sovereign state.'" *Id.* (quoting *Earles v. State Bd. of Certified Pub. Accountants of La.*, 139 F.3d 1033, 1037 (5th Cir.), *cert. denied*, 525 U.S. 982 (1998)); *accord Perez*, 307 F.3d at 326. Therefore, when faced with a question of Eleventh Amendment immunity, the court must inquire into the relationship between the state and the entity in question. *See Doe*, 519 U.S. at 429. In doing so, the court "must examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself." *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Hander v. San Jacinto Jr. Coll.*, 519 F.2d 273, 279 (5th Cir. 1975)); *see Southwestern Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 938 (5th Cir.), *cert. denied*, 534 U.S. 891 (2001); *Clark*, 798 F.2d at 744; *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981).

In making this inquiry, the Fifth Circuit traditionally has considered six factors:

(1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.

*Vogt*, 294 F.3d at 689 (citing *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 281 (5th Cir. 2002); *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000)); *see United States ex rel. Barron v. Deloitte & Touche, L.L.P.*, 381 F.3d 438, 440 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 2905 (2005); *Clark*, 798 F.2d at 744-45. "'[T]he most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds.'" *Vogt*, 294 F.3d at 689 (quoting *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147-48 (5th Cir. 1991)); *see United States ex rel. Barron*, 381 F.3d at 440. "[T]he rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman*, 415 U.S. at 663. Hence, where it is apparent that the state is the real party in interest to a suit and that any monetary award against a state official or entity would be satisfied by state funds, the suit is foreclosed by the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 337 (1979); *Edelman*, 415 U.S. at 663; *United States ex rel. Barron*, 381 F.3d at 440; *Laje*, 665 F.2d at 727.

While a state's sovereign immunity may be waived and a state may consent to suit against it in federal court, the Supreme Court has insisted that "the State's consent be unequivocally expressed." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 99 (citing *Edelman*, 415 U.S. at 673); *see Martinez*, 300 F.3d at 575. It is well established that "a waiver of sovereign immunity must be specific and explicit" and cannot be readily implied. *Petterway v. Veterans Admin. Hosp.*, 495 F.2d 1223, 1225 n.3 (5th Cir. 1974); *see Idoux v. Lamar Univ. Sys.*, 817 F. Supp. 637, 641 (E.D. Tex. 1993). "Waiver may be found only where the waiver is express or the inference of waiver is overwhelming." *Id.*

Furthermore, "[a] state does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in its own courts." *Sherwinski*, 98 F.3d at 851-52 (citing *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473-74 (1987)); *accord Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990); *Walker v. Texas, Office of the Attorney Gen.*, 217 F. Supp. 2d 776, 780 (E.D. Tex. 2002). "Even when a State consents to suit in its own courts, . . . it may retain Eleventh Amendment immunity from suit in federal court." *Martinez*, 300 F.3d at 575; *accord Port Auth. Trans-Hudson Corp.*, 495 U.S. at 306; *Perez*, 307 F.3d at 332; *Sherwinski*, 98 F.3d at 851-52 (citing *Welch*, 483 U.S. at 473-74). In order for a state statute to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *Martinez*, 300 F.3d at 575. "'A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued.'" *Welch*, 483 U.S. at 473 (quoting *Pennhurst State Sch. & Hosp.*, 465 U.S. at 99) (emphasis in original); *accord Sherwinski*, 98 F.3d at 852.

The Fifth Circuit has focused on the following factors when assessing whether a university qualifies for Eleventh Amendment immunity as an arm of the state: (1) the status of the university under state law; (2) the degree of state control over the university; and (3) the extent to which a money judgment against the university would interfere with the fiscal autonomy of the state. *See United Carolina Bank v. Board of Regents of Stephen F. Austin State Univ.*, 665 F.2d 553, 557-61 (5th Cir. 1982); *see also Lewis v. Midwestern State Univ.*, 837 F.2d 197, 198 (5th Cir.), *cert. denied*, 488 U.S. 849 (1988); *Idoux*, 817 F. Supp. at 639-40.

An examination of the relevant state law reveals that the University of Texas was established by the Texas Constitution, which provides for its funding by authorizing monetary appropriations through the Texas Legislature, granting it lands, and creating the Permanent University Fund from which the legislature may make appropriations from the interest accrued. *See* TEX. CONST. art. VII, §§ 10, 11, 15, 18.  The University of Texas is governed by a nine-member board of regents who are appointed by the governor of Texas with the advice and consent of the Texas Senate.  *See* TEX. EDUC. CODE ANN. § 65.11 (Vernon 2002).  A central administration office, established by the board of regents, oversees the university system and coordinates activities within the system.  *See id.* at § 65.16.  The university is also subject to the oversight and authority of the Texas Higher Education Coordinating Board.  *See id.* at § 61.021 (Vernon 1996).  The Texas Legislature has enacted statutes that specifically define a "state agency" as including a "university system" and an "institution of higher education as defined by Section 61.003, Education Code."  *See, e.g.*, TEX. GOV'T CODE ANN. §§ 441.101, 468.001, 556.001 (Vernon 2004).  The Texas Education Code expressly lists UTMB as part of the University of Texas system.  *See* TEX. EDUC. CODE ANN. § 65.02(a)(8) (Vernon 2002).

Thus, in view of the express language of the Texas Constitution and various state statutes, along with the degree of control maintained by the state, it is apparent that Texas lawmakers intended the University of Texas Medical Branch to be considered an arm of the state and that its operating expenses, as well as judgments against it, were to be paid from state funds.  *See McElwee v. Wallantas*, No. Civ. A. L-03-CV-172, 2005 WL 2346945, at *2 n.4 (S.D. Tex. Sept. 26, 2005).  Additionally, Texas state courts have routinely recognized UTMB as an agency of the State.  *See Robinson v. University of Tex. Med. Branch at Galveston*, 171 S.W.3d 365, 368 (Tex.

App.—Houston [14th Dist.] 2005, no pet. h.); *University of Tex. Med. Branch at Galveston v. Mullins*, 57 S.W.3d 653, 657 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *University of Tex. Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.); *Clark v. University of Tex. Health Sci. Ctr. at Houston*, 919 S.W.2d 185, 187 (Tex. App.—Eastland 1996, writ denied); *Bagg v. University of Tex. Med. Branch at Galveston*, 726 S.W.2d 582, 584 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

Moreover, previous decisions of the Fifth Circuit and federal courts in Texas have consistently afforded Eleventh Amendment immunity to the University of Texas, including UTMB. *See, e.g.*, *Texas ex rel. Bd. of Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 820 n.10 (5th Cir. 1998), *cert. denied*, 525 U.S. 1102 (1999); *Cantu v. Rocha*, 77 F.3d 795, 802 n.2 (5th Cir. 1996); *Hart v. University of Tex. at Houston*, 474 F. Supp. 465, 467 (S.D. Tex. 1979); *see also Sampson v. United States*, 73 F. App'x 48, 49 (5th Cir. 2003); *O'Rourke v. United States*, 298 F. Supp. 2d 531, 536 (E.D. Tex. 2004); *Jones v. Gahn*, 246 F. Supp. 2d 622, 628 (S.D. Tex. 2003); *Baldwin v. University of Tex. Med. Branch at Galveston*, 945 F. Supp. 1022, 1030 (S.D. Tex. 1996), *aff'd*, 122 F.3d 1066 (5th Cir. 1997). In keeping with these decisions, this court likewise concludes that UTMB is an arm of the State of Texas for Eleventh Amendment purposes and is entitled to the same immunity as the State from suit in federal court.

        1.    <u>Cause of Action Asserted Under Section 1983</u>

Having found that UTMB is an agency of the State of Texas and entitled to Eleventh Amendment protection, the court turns to the specific claims asserted in the case at bar. In her complaint, Bowens seeks compensatory and punitive damages from UTMB under 42 U.S.C. § 1983 (2000) for violations of Armstrong's Fourth and Eighth Amendment rights. A

state is not considered a "person" against whom a claim for money damages may be asserted under 42 U.S.C. § 1983 (2000). *See Lapides*, 535 U.S. at 617 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 71 (1989)); *accord Caffey v. Johnson*, 883 F. Supp. 128, 132 (E.D. Tex. 1995). Moreover, in light of the fact that UTMB is an arm of the state, that "Section 1983 does not waive the states' sovereign immunity, . . . and [that] Texas has not consented to this suit," Plaintiff's Section 1983 claim against UTMB for money damages is foreclosed by the Eleventh Amendment. *Aguilar v. Texas Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998), *cert. denied*, 528 U.S. 851 (1999); *accord LaFontaine v. Mail Room Employees*, No. Civ. A. 501CV220C, 2004 WL 1380521, at *3 (N.D. Tex. June 21, 2004).

2.  Cause of Action Asserted Under the Federal Tort Claims Act

In her complaint, Bowens also seeks damages from UTMB for violation of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80 (2000). "The FTCA provides for a waiver of the United States' immunity from suit for those claims regarding 'injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001) (quoting 28 U.S.C. § 2679(b)(1) (2000)). This waiver of the *federal* government's sovereign immunity for claims sounding in tort does not concomitantly waive the states' immunity from suit in federal court. *See O'Rourke*, 298 F. Supp. 2d at 535-36 (emphasis in original).

Furthermore, it is well established that although the United States has consented to be sued pursuant to the terms of the FTCA, such consent does not extend to the acts of independent contractors. *See Broussard v. United States*, 989 F.2d 171, 174 (5th Cir. 1993) (citing

15

28 U.S.C. § 2671 (2000); *United States v. Orleans*, 425 U.S. 807, 814 (1976); *Logue v. United States*, 412 U.S. 521, 525-27 (1973)); *see also Sampson*, 73 F. App'x at 49; *Rodriguez v. Sarabyn*, 129 F.3d 760, 765 (5th Cir. 1997). It is apparent under the circumstances surrounding this case that UTMB and its medical personnel are independent contractors and not employees of the federal government. This conclusion comports with prior case law finding UTMB to be an independent contractor of the BOP with reference to medical care provided to prisoners housed in FCC Beaumont. *See Sampson*, 73 F. App'x at 49 (noting that the FTCA waiver of sovereign immunity does not extend to negligent actions of independent contractors such as UTMB); *O'Rourke*, 298 F. Supp. 2d at 536 (holding that UTMB is not subject to suit under the FTCA "while acting as a contract healthcare provider for the federal prison system"). Accordingly, Plaintiff's FTCA claim, based on the allegation that UTMB medical personnel acted negligently while rendering services to BOP inmate Armstrong, must fail. *See Sampson*, 73 F. App'x at 49; *O'Rourke*, 298 F. Supp. 2d at 536; *see also Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998); *Rodriguez*, 129 F.3d at 765.

III.     Conclusion

Plaintiff Bowens has failed to satisfy her burden of establishing federal subject matter jurisdiction with respect to her claims against UTMB for violations of Armstrong's Fourth and Eighth Amendment rights under 42 U.S.C. § 1983 and the Federal Tort Claims Act. UTMB is an arm of the State of Texas, is not a person subject to suit under 42 U.S.C. § 1983, and is entitled to invoke Eleventh Amendment immunity. Because UTMB's immunity from suit in federal court has not been waived and UTMB has not consented to being sued in federal court,

Defendant UTMB's motion to dismiss is GRANTED. Bowens's claims against UTMB are dismissed without prejudice.

SIGNED at Beaumont, Texas, this 22nd day of November, 2005.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE